# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. FREI CONTRACTOR CORPORATION, an Oklahoma Corporation,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>1. BALFOUR BEATTY COMMUNITIES LLC, a Delaware Company,<br><br>-and-<br><br>2. ARCHITECTURAL MILLWORKS, LLC, a Connecticut Company,<br><br>　　　　　Defendants. | No. _____<br><br>**COMPLAINT FOR:**<br>1. **Breach of Contract**<br>2. **Breach of Contract**<br>3. **Detrimental Reliance**<br>4. **Conversion**<br>5. **Willful Deceit**<br>6. **Fraud**<br><br>**JURY TRIAL REQUESTED** |

## PLAINTIFF'S COMPLAINT

Plaintiff FREI CONTRACTOR CORPORATION ("Frei") hereby files this Complaint against defendants BALFOUR BEATTY COMMUNITIES LLC ("BBC") and ARCHITECTURAL MILLWORKS, LLC ("AMI"), and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action at Oklahoma common law for breach of contract, detrimental reliance, conversion, and fraud, and under Oklahoma Title 76 O.S. § 2 for deceit. Plaintiff Frei's claims against Defendant AMI are based upon Frei's detrimental reliance upon AMI's misrepresentative oral promises for the procurement of renovation jobs at two Air Force bases, Frei's subsequent costs and loss of profits, and the conversion of Frei's assets. Defendant BBC knew or should have known of the deceit and fraud and colluded in the deceit and fraud to its unjust benefit and to the legal detriment of Frei.

1

## THE PARTIES

2. Plaintiff Frei initially incorporated in New Jersey on November 2, 2006. On September 11, 2009, Frei reorganized and incorporated under the laws of the State of Oklahoma. Frei's principal place of business is at 8650 West Charter Oak Road, Edmond, Oklahoma, 73003.

3. Defendant AMI is a limited liability company organized under the laws of the State of Connecticut. On information and belief, Jeffrey Scalora ("Scalora") is a principal and/or owner and officer of AMI, and is a citizen of the State of Connecticut. On information and belief, there are no other members AMI that are citizens of the State of Oklahoma.

4. Defendant BBC is a limited liability company organized under the laws of the State of Delaware. On information and belief, BBC is a subsidiary of Balfour Beatty Capital Group, Inc, a Delaware corporation having its principal place of business at 10 Campus Boulevard, Newton Square, Pennsylvania, 19703. On information and belief, there are no other members of BBC that are citizens of the State of Oklahoma.

## JURISDICTION AND VENUE

5. This is a civil action at Oklahoma common law and under Oklahoma Title 76 O.S. § 2 for damages in excess of $75,000 (exclusive of interest and costs) and is between citizens of different states. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a) (1).

6. This Court has personal jurisdiction over Defendants by virtue of, *inter alia*, Defendants' continuous and systemic contacts with the Western District of Oklahoma.

Defendants have solicited and transacted business in the State of Oklahoma and availed themselves to the benefits and protections of the laws of Oklahoma.

7. Jurisdiction in this action is founded upon diversity of citizenship. As discussed below, a substantial part of the events and omissions giving rise to the claims occurred in this judicial district. Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. § 1391(a) (2).

## FACTUAL BACKGROUND

8. Frei was incorporated in the State of New Jersey on November 2, 2006 and engaged in the business of the emergency restoration of homes after disasters from fire and floods. At the immediate time before the subject of this Complaint, Frei was also employed in Opelousas, Louisiana for the renovation of hurricane damage to homes and apartment complexes.

9. From November 2, 2006 until January 5, 2009 Frei was employed by four major contractors for its restoration work; namely, (a) Woods Restoration; (b) Allen Industries; (c) Rapid Recovery; and (d) Serve-Pro Egg Harbor/Ventnor City.

10. Work derived from these three four sources amounted to profits in excess of two million dollars ($2,000,000).

11. Scalora was an employee of Woods Restoration who as of the time of this filing has been, upon information and belief, fired from the company. On or about November 15, 2008, Scalora contacted Frei. The telephone call was made to Krzysztof Dymko ("Dymko"), partner to Zsolt Freiburger ("Freiburger"), the company owner.

12. In that telephone conversation, Scalora discussed his new company, AMI, securing a contract at Luke Air Force Base in Arizona. He offered to subcontract to Frei a $250,000 renovation project at the Luke Air Force Base in Arizona, to be completed over the course of six months, if Frei would relocate to Arizona for the work. Scalora also promised he would subcontract additional renovation work out to Frei at Luke Air Force Base, and further work upon securing a contract at an unspecified base in the state of Washington, an unspecified base in Oklahoma, and at additional unspecified military bases upon securing contracts. Dymko requested the specifications to the project at Luke Air Force Base, and Scalora sent them to Dymko via mail.

13. AMI was then currently acting in the capacity of general contractor with BBC as the project owner.

14. Dymko sent the specifications to Freiburger, then in Louisiana, who reviewed them and determined that the project could not be done for $250,000.

15. On or about November 21, 2008, Dymko contacted Scalora via telephone. Dymko expressed Frei's concerns that the discussed job could not be adequately performed for $250,000. Scalora told Dymko not to worry, that Frei would be given more money for the job, and that AMI would take care of Frei's housing needs in Arizona during the job.

16. In subsequent weekly telephone conversations between Scalora and Dymko, Scalora informed Dymko of Scalora's progress handling the requisite paperwork to employ Frei and what date would be appropriate for Frei to arrive on site. On or about January 1, 2009, Scalora called Dymko and informed Dymko that AMI was prepared for Frei to arrive and work, and requested that Frei relocate employees and begin work.

17.     On January 5, 2009, Freiburger and three other employees arrived at Luke Air Force Base, prepared to work.

18.     AMI was then unprepared for Frei to begin work.

19.     Between January 5, 2009, and February 2, 2009, Freiburger hired seven additional employees to handle the work at Luke Air Force Base.

20.     On February 2, 2009, AMI was prepared for Frei to begin work. Kent Collins and Jeffrey Scalora of AMI had a meeting with Freiburger and Dymko at Luke Air Force Base on that date, before work began. In that meeting, Scalora stated that he needed eight Frei employees on site at Tinker Air Force Base in Oklahoma "by Monday" (February 9, 2009) to begin work on a project. AMI would pay for housing costs, and payment and scope of work would be discussed in detail when Frei employees arrived on site. The parties agreed to negotiate a payment for the work at both bases on the basis of hourly rates.

21.     Frei began renovation work at Luke Air Force Base on February 2, 2009.

22.     On February 9, 2009, Freiburger and seven other Frei employees arrived on site at Tinker Air Force Base. In the course of handling badging for Frei employees, Frei was informed by BBC that in order to be a subcontractor for AMI, Frei would have to keep a certified payroll. Frei would also be required to have liability and workers compensation insurance for all employees.

23.     On February 11, 2009, at an evening meeting at the Sheraton Midwest City Hotel located at 5750 Will Rogers Road, Midwest City, OK, Scalora and AMI's Project Manager, Richard Knox, met with Freiburger and Dymko to discuss payment for the jobs

at Luke Air Force Base and Tinker Air Force Base. Freiburger expressed concerns that Frei lacked the expertise necessary to handle the certified payroll requirements, and that the insurance requirements would increase Frei's costs for the job. Scalora proposed that as part of its payment to Frei, AMI would handle the certification and payroll requirements for Frei. AMI would pay the Frei workers their wages, pay associated insurance and worker's compensation costs, pay taxes and fees for the labor hours, and certify records of such. Frei would submit invoices to AMI for the remaining price of the contract on a monthly basis. The aggregate price to AMI would be on the basis of laborer hours worked: the parties negotiated an overall rate of $22.00 per hour for work on the Tinker Air Force Base and $25.00 per hour for the Luke Air Force Base project. Frei agreed to perform the work for that compensation and began work at Tinker Air Force Base.

24.    AMI was unable to make payroll as of the first week of work, and Scalora asked Frei to cover payroll costs. Frei did so.

25.    AMI continued to ask Frei to advance funds to cover Frei's labor costs, failing to make any payment until April 1, 2009. AMI's first payment was for twelve thousand dollars ($12,000). At that time, AMI had been invoiced by Frei for $102,694.50.

26.    In the following weeks, Frei continued to invoice and contact AMI regarding payment of its remaining balance, and cover its own payroll costs. AMI continued to make payment to Frei irregularly and inadequately. Frei temporarily ceased work on May 25, 2009 pending AMI's payment of its remaining balance. Frei resumed work on May 27, 2009, when Scalora asserted that a payment was immediately forthcoming;

when payment was not made, Frei ceased work on May 28, 2009. May 28, 2009 was the last day Frei performed work at Tinker Air Force Base or Luke Air Force Base.

27. On May 19, 2009, Frei sent a letter to BBC through their employee Ronald Moyer advising BBC of AMI's difficulties making timely payment, instructions from AMI to Frei to deviate from project plans, and of Frei's resulting difficulty in continuing work on the project.

28. On May 28, 2009 Frei attempted to file a mechanic's lien on the property at Tinker Air Force Base that Frei had worked upon, in the amount of $227,634.50.

29. BBC's Project Manager Joe Schneider ("Schneider") contacted Dymko on May 28, 2009 via electronic mail, regarding the issue of the lien. Schneider expressed appreciation for Frei's work on the project and that he wanted to assure that Frei would be paid. He stated that he had reviewed Frei's invoices to AMI, requested an explanation of AMI's outstanding debts, strongly encouraged Frei to work out its differences with AMI, and requested that Frei discuss the situation further with BBC. Copied on the email were Jeffrey Scalora and Leana Menjivar of AMI and Ronald Moyer, Lou Gibilisco, and Jefferey Downing of BBC.

30. On May 28, 2009, Scalora contacted Dymko via telephone and invited Frei to a meeting at the renovation office at Tinker Air Force Base on or about June 2, 2009, between AMI and BBC to resolve the situation with Frei. Freiburger and Dymko attempted to attend the meeting, but were turned away at the door of the building.

31. Freiburger and Dymko made numerous additional efforts to discuss matters with BBC. In particular, on July 13, Freiburger attempted to contact BBC employee Shane

White via electronic mail seeking bond information on AMI's contract with BBC or BBC's contract with the government, for the purpose of securing a lien.

32. On July 13, 2009 BBC's Vice President for Renovation and Construction, Sean Kent ("Kent"), contacted Frei and Frei's retained accountant George Maiman via email directing them to continue working with AMI to resolve Frei's issues, and stating that its employee Shane White's responsibilities were outside the scope of Frei's relationship with AMI. AMI employee Leana Mejivar, who had been handling AMI's certified payroll and other financial matters related to Frei, was copied on the email, as were BBC employees Dave Cloutier and Tom Farrell.

## COUNT I
## BREACH OF CONTRACT BY DEFENDANT AMI

33. Frei herein incorporates by reference all allegations of paragraphs 1-32.

34. In a telephone conversation on or about November 15, 2008, AMI offered Frei employment at Luke Air Force Base on a $250,000 project lasting six months if Frei would forgo other business opportunities and relocate its employees and operations to work on those bases. AMI amended this offer to be in excess of $250,000 in a telephone conversation on or about November 21, 2008.

35. Frei accepted the offer, relocated, and began work.

36. The agreement reached by the parties constituted formation of a contract between Frei and AMI.

37. AMI breached this contract with Frei when it failed to supply employment of the scope agreed upon.

38. As a foreseeable result of this breach, Frei suffered damages in the form of lost profits for work done on the bases, travel and relocation expenses, and lost business opportunities in Louisiana and New Jersey.

## COUNT II
## BREACH OF CONTRACT BY DEFENDANT AMI

39. Frei herein incorporates by reference all allegations of paragraphs 1-38.

40. On February 2, AMI and Frei agreed that Frei would conduct work on a renovation project at Luke Air Force Base for a sum in excess of $250,000, with the exact amount determined on an hourly basis to be negotiated.

41. On February 11, AMI and Frei agreed that in exchange for Frei working on renovation projects at Tinker Air Force Base and Luke Air Force Base, AMI would pay Frei $22.00 per worker hour for the Tinker Air Force Base Project and $25.00 per hour for the Luke Air Force Base project. AMI would also pay for housing and utilities for out of state workers, taxes and fees for labor hours at Tinker Air Force Base, and for the workers compensation and liability insurance for Frei employees at Tinker Air Force Base. Payment would be made in part through payment of those payroll costs on Frei's behalf as necessary, and in part when invoiced by Frei.

42. The agreement reached by the parties constituted formation of a contract between Frei and AMI.

43. AMI breached this contract when it repeatedly and continuously failed to make payment on Frei's behalf or make full payment upon being invoiced for work done by Frei.

44.     As a foreseeable result of the breach, Frei suffered damages in the form of uncompensated labor, lost profits for work done on the bases, travel and relocation expenses, cost of insurance, housing expenses, lost business opportunities in Louisiana and New Jersey, damaged credit, interest and fees on debts unpaid due lack of funds, and other costs of the job.

## COUNT III
## DETRIMENTAL RELIANCE UPON PROMISE FROM DEFENDANT AMI

45.     Frei herein incorporates by reference all allegations of paragraphs 1-44.

46.     In a telephone conversation on or about November 15, 2008, AMI promised Frei employment at Luke Air Force Base on a $250,000 project lasting six months if Frei would forgo other business opportunities and relocate its employees and operations to work on those bases. AMI amended this offer to be in excess of $250,000 in a telephone conversation on or about November 21, 2008.

47.     On February 2, 2009, AMI promised compensation to Frei in excess of $250,000 for work to be performed at Luke Air Force Base, with the exact amount to be negotiated, if Frei would engage in specified work on the site. On February 11, 2009, AMI promised Frei compensation of $22.00 per worker hour for the Tinker Air Force Base Project and $25.00 per worker hour for the Luke Air Force Base project, payment for housing and utilities for out of state workers, taxes and fees for labor hours at Tinker Air Force Base, and workers compensation and liability insurance for Frei employees at Tinker Air Force Base, if Frei would perform necessary work for the renovation projects at the bases.

48. At the time AMI made those representations to Frei, AMI knew or should have known that it would be unable to make payment for the work.

49. Frei lacked knowledge of AMI's inability to meet its obligations, and reasonably relied upon AMI's promises of employment and payment.

50. AMI made those promises to Frei with the intent that they be acted upon.

51. Frei acted upon those promises to its detriment when it relocated to the bases and engaged in renovation work, suffering damages in the form of uncompensated labor, lost profits for work done on the bases, travel and relocation expenses, cost of insurance, housing expenses, lost business opportunities in Louisiana and New Jersey, damaged credit, interest and fees on debts unpaid due lack of funds, and other costs of the job.

## COUNT IV
## CONVERSION BY DEFENDANT AMI

52. Frei herein incorporates by reference all allegations of paragraphs 1-51.

53. Frei was the owner of tools and materials used in the renovation work at Luke Air Force Base.

54. When Frei ceased work at Luke Air Force Base, AMI intentionally denied Frei access to its tools and materials on the site.

55. Frei did not and has not consented to AMI's taking possession of the tools and materials.

56. Frei has suffered damage as a result, in the form of loss of the value and loss of the use of its tools and materials, and travel expenses incurred in attempt to secure the tools and materials.

## COUNT V
## WILLFUL DECEIT BY DEFENDANTS AMI AND BBC

57. Frei herein incorporates by reference all allegations of paragraphs 1-56.

58. In a telephone conversation on or about November 15, 2008, AMI offered Frei employment at Luke Air Force Base on a $250,000 project lasting six months and on projects on other bases if Frei would forgo other business opportunities and relocate its employees and operations to work on those bases. On February 2, 2009, AMI promised compensation to Frei in excess of $250,000 for work to be performed at Luke Air Force Base, with the exact amount to be negotiated, if Frei would engage in specified work on the site. On February 11, 2009, AMI promised Frei compensation of $22.00 per worker hour for the Tinker Air Force Base Project and $25.00 per worker hour for the Luke Air Force Base project, payment for housing and utilities for out of state workers, taxes and fees for labor hours at Tinker Air Force Base, and workers compensation and liability insurance for Frei employees at Tinker Air Force Base, if Frei would perform necessary work for the renovation projects at the bases.

59. AMI's promises that it would employ Frei and compensate Frei for the specified amounts were made without belief that the assertions were true, without reasonable ground for belief in their truth, and/or without intent of performance.

60. AMI made those promises with the intent to induce Frei to alter its position to Frei's risk and/or injury.

61.     BBC knew or had reason to know that AMI would be unable to make payment. BBC knew or had reason to know that AMI would make willfully deceitful promises related to its payment.

62.     In its May 28 and July 13 communications to Frei, BBC gave information of facts likely to mislead for want of communication of AMI's inability to make payment and the status of a bond on AMI's contract with BBC and on BBC's contract with the Federal Government.

63.     BBC made such representations with the intent to induce Frei to alter its position to Frei's risk and/or injury.

64.     On information and belief, BBC otherwise conspired and colluded with AMI in regard to AMI's willfully deceitful promises to Frei's detriment and BBC's unjust enrichment. On information and belief, BBC undertook to provide opportunity for, effectuate, and conceal the deceitful promises of AMI.

65.     As a result of these deceitful communications, Frei has suffered damages in the form of uncompensated labor, lost profits for work done on the bases, travel and relocation expenses, cost of insurance, housing expenses, lost business opportunities in Louisiana and New Jersey, other costs of the job, interest and fees on debts unpaid due lack of funds, and additional attorneys' fees and accounting expenses.

## COUNT VI
## FRAUD BY DEFENDANTS AMI AND BBC

66.     Frei herein incorporates by reference all allegations of paragraphs 1-65.

67. On or about November 15, 2008, AMI, acting through Jeffrey Scalora and in an oral conversation via telephone with Freiburger, promised employment to Frei on a $250,000 project lasting six months at Luke Air Force Base and on other unspecified projects at other bases if Frei would forgo other opportunities and relocate its workers to the bases. On February 2, 2009, AMI, acting through Jeffrey Scalora, in an oral conversation with Freiburger at Luke Air Force Base, promised compensation to Frei in excess of $250,000 for work to be performed over the course of one year at Luke Air Force Base, with the exact amount to be negotiated, if Frei would engage in the work on the site. On February 11, 2009, AMI, in a meeting at the Sheraton Midwest City Hotel located at 5750 Will Rogers Road, Midwest City, OK, between Freiburger, Dymko, Scalora, and AMI Project Manager Richard Knox, promised Frei compensation of $22.00 per worker hour for the Tinker Air Force Base Project and $25.00 per worker hour for the Luke Air Force Base project, payment for housing and utilities for out of state workers, taxes and fees for labor hours at Tinker Air Force Base, and workers compensation and liability insurance for Frei employees at Tinker Air Force Base, if Frei would perform necessary work for the renovation projects at the bases.

68. In those conversations AMI knowingly and with the intent to mislead Plaintiff, misrepresented to Plaintiff the duration, scope and compensation for said jobs.

69. These misrepresentations were material and were made affirmatively, knowingly, and with intent to cause Plaintiff to pay Defendant AMI's costs for labor, insurance, payroll and other costs of the job.

70. As a result of these misrepresentations, Frei has suffered damages in the form of uncompensated labor, lost profits for work done on the bases, travel and relocation expenses, cost of insurance, housing expenses, lost business opportunities in Louisiana and New Jersey, other costs of the job, interest and fees on debts unpaid due lack of funds, and additional attorneys' fees and accounting expenses.

71. Defendant BBC knew or had reason to know of Defendant AMI's fraudulent activities. On information and belief, BBC conspired and colluded with AMI in regard to AMI's misrepresentations to Frei's detriment and BBC's unjust enrichment. On information and belief, BBC undertook to provide opportunity for, effectuate, and conceal the misrepresentations of AMI.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants for:

(a).   Damages of an amount in excess of $75,000.00;

(b).   Disgorgement of all gains, profits, and advantages derived by Defendants' fraud and other violations of law;

(c).   Punitive damages;

(d).   A reasonable attorney fee, costs, and interest; and

(e).   Such other and further relief that this Court may deem appropriate.

Respectfully Submitted,

s/ Justin W. Perry
Justin W. Perry
OBA #18293
Attorney for Plaintiff
41 E. 15th Street
Edmond, Oklahoma  73013
Phone:  (405) 228-0366
FAX: (405) 232-0096
justinperrylaw@yahoo.com

Dated:  August 06, 2010

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

                                              Respectfully Submitted,

                                              s/ Justin W. Perry
                                              Justin W. Perry
                                              OBA #18293
                                              Attorney for Plaintiff
                                              41 E. 15th Street
                                              Edmond, Oklahoma 73013
                                              Phone: (405) 228-0366
                                              FAX: (405) 232-0096
                                              justinperrylaw@yahoo.com

                                              Dated: August 06, 2010